Filed 6/27/13  P. v. Castle CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Butte)

----

| | |
|---|---|
| THE PEOPLE, | C068413 |
| Plaintiff and Respondent, | (Super. Ct. No. CM031824) |
| v. | |
| JOEL KELLY CASTLE, | |
| Defendant and Appellant. | |

A jury convicted defendant Joel Kelly Castle of one count of possessing marijuana for sale and one count of selling marijuana, but deadlocked on a firearm enhancement allegation regarding the possession offense (the trial court previously had granted defendant's motion to dismiss, for insufficient evidence, a firearm enhancement allegation regarding the sale offense).  (Health & Saf. Code, § 11359, former § 11360, subd. (a); former Pen. Code, § 12022, subd. (a)(1).)

After refusing felony probation—because a probation condition prohibited him from using marijuana, including medical marijuana—defendant was sentenced to an aggregate term of two years eight months.

1

On appeal, defendant contends (1) the trial court abused its discretion in repeatedly denying his *Marsden* motions to obtain new counsel,[1] and (2) the actions of his counsel and the trial court regarding his narrative testimony deprived him of a fair trial. We shall affirm the judgment.

## FACTUAL BACKGROUND

In January 2010, a City of Chico employee, Mark Dickman, contacted the Chico Police Department's "tip line." Dickman reported that he had received an e-mail from a castlejoel@yahoo.com that offered to trade marijuana for a guitar Dickman had listed for sale on Craigslist.

The next day, Chico police detective Kevin Hass, posing as Dickman, exchanged the guitar for marijuana from defendant. Two additional police officers witnessed this exchange.

After completing the marijuana transaction, defendant was arrested. A search of his motel room uncovered five and a-half pounds of five different strains of marijuana, in various containers including plastic baggies and small paper bags; a digital gram scale with marijuana residue; a pay-owe ledger, including a detailed description of the transaction at issue (which did not say anything about medical marijuana); an incriminating cell phone text message; and a loaded .25-caliber semiautomatic handgun.

In narrative testimony read from a prepared statement, defendant testified: He had tried to fire his public defender three times, but Butte County judges refused his requests; he founded and has been operating the Chico Cannabis Club for eight years in an effort to take cannabis patients out of the "criminal world"; the district attorney and some in the police department were out to "get" him; he was entrapped; the "pay-owe" list was

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118.

"suspect"; he believed the marijuana transaction at issue was to provide medicinal cannabis; and the marijuana he possessed was his annual allotment of medicine pursuant to a valid recommendation.

In rebuttal, Detective Hass testified that his marijuana transaction with defendant did not encompass any issue or evidence involving medical marijuana.

## DISCUSSION

### I. Denial of Defendant's *Marsden* Motions

Our state Supreme Court, in *People v. Streeter* (2012) 54 Cal.4th 205 (*Streeter*), recently set forth the applicable law and standard of review on this issue:

" 'When a defendant seeks substitution of appointed counsel pursuant to *People v. Marsden*, *supra*, 2 Cal.3d 118, "the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." ' [Citation.] 'A trial court should grant a defendant's *Marsden* motion only when the defendant has made "a substantial showing that failure to order substitution is likely to result in constitutionally inadequate representation." ' [Citation.] [¶] 'We review the denial of a *Marsden* motion for abuse of discretion.' [Citation.] 'Denial is not an abuse of discretion "unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel." ' " (*Streeter*, *supra*, 54 Cal.4th. at p. 230.)

As we shall explain, the trial court did not abuse its discretion in denying defendant's *Marsden* motions.

3

Over the course of 13 months (covering a period just after defense counsel was appointed to the onset of trial), defendant made four unsuccessful *Marsden* motions before three different judges.

In his appellate briefing, defendant has explained the basis for his *Marsden* requests: "From the outset of this case, [defendant] and his attorney were at odds about how to conduct [defendant's] defense. [Defendant] is a staunch and very public advocate of safe access to medical cannabis under the Compassionate Use Act of 1996. (Health & Saf. Code, § 11362.5.) At every hearing in this case, and in documents he filed with the court, [defendant] insisted that he was the target of selective prosecution and bias *because* of his staunch advocacy. In his defense, [defendant] wanted his attorney to elicit evidence of his notoriety, and evidence of publicly stated police bias against him. His attorney flatly refused to do so, telling [defendant] and the court, time and again, that none of this was relevant to any of the charges against [defendant]." "[Defendant] insisted that he had been entrapped, and that the person he spoke to about the guitar ([the police officer or the Chico employee]) begged and pleaded for 'safe access' to cannabis."

At the first *Marsden* hearing, defendant conceded his counsel was "doing a professional job." That was the end of that matter.

The subsequent *Marsden* hearings disclosed:

(1) with respect to defense counsel—counsel had 40 years of criminal defense experience; counsel had thoroughly investigated defendant's case, deployed an investigator, was well versed with the facts and law of the case, met often with defendant, and went through "voluminous materials" provided by defendant; and counsel believed there was strong evidence supporting the possession and sale charges, but there was a "reasonable chance of defeating" the firearm allegations;

4

(2) with respect to defendant—defendant was allowed to fully explain the bases of his *Marsden* contentions and to relate specific instances of inadequate counsel performance; defendant incorrectly believed he was completely innocent because he had a medical cannabis recommendation; and defendant wanted his trial to serve as a political and media event to disclose the injustice of legal restrictions on medical cannabis; and

(3) with respect to the case—defendant's desired defense was "totally irrelevant to the case"; and the city employee (tipster) at issue swore in writing to the defense investigator that he (the employee) never told defendant that he was going to get a marijuana recommendation, or that he wanted to join defendant's cannabis club.

As but one example of what defense counsel was up against in representing defendant, defendant was released on his own recognizance (OR) on four occasions prior to trial on the condition that he not use marijuana (even for medical purposes). On each occasion, defendant promptly proceeded to smoke marijuana in the most public of places (for example, on the steps of the municipal building in Chico), for which he was arrested and charged with a misdemeanor. Defendant did not want his counsel to seek the dismissal of any of these cases; indeed, defendant wanted each of them to go to trial so he could protest the absurdity of the OR condition prohibiting medical cannabis. (These counts were all dismissed.)

The record no doubt shows that defendant and his counsel were embroiled in a conflict. But the record is equally clear that the trial court did not abuse its discretion in finding this was not the kind of conflict for which ineffective representation was likely to result. (*Streeter*, *supra*, 54 Cal.4th at p. 230.) Defense counsel was experienced, knowledgeable and focused on getting his client the best result he could under the law. Defendant had another agenda altogether, one that focused on the political and media realms rather than on the only realm relevant here—the legal one. Defendant may or may not have a point regarding the injustice of a legal ban on marijuana that extends to

5

medical marijuana in the OR and probation contexts. But the proper place for making that point is within the halls of the appropriate legislative body rather than within the walls of the courtroom in which his marijuana possession and sale charges were being tried.

We conclude the trial court did not abuse its discretion in denying defendant's *Marsden* motions.[2]

## II. Defendant's Narrative Testimony

As summarized above in the Factual Background part of this opinion, defendant testified in narrative form by reading a prepared statement. Prior to doing so, defense counsel explained to the trial court, outside the jury's presence, that defendant wished to do this, and that any attempt by counsel to direct defendant's testimony would be "futile."

A defendant has a fundamental right to testify on his own behalf, and may do so in narrative form, particularly if this form will reconcile this fundamental right with a defense counsel's duties to his client and to the court as an officer of the court (for example, to not present evidence that counsel believes may self-incriminate his client or may be false). (*People v. Nakahara* (2003) 30 Cal.4th 705, 717; *People v. Guzman* (1988) 45 Cal.3d 915, 942-946, 962, overruled on another point in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

Defendant contends that actions of his counsel and of the trial court regarding this narrative testimony deprived him of a fair trial. We disagree.

---

[2] At times during his *Marsden* motions, defendant would hint at a *Faretta* motion as well (self-representation; *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562]), only to disclaim such a motion or couple it with a request for "advisory counsel." On appeal, defendant does not claim error regarding *Faretta* requests.

6

*Defense Counsel*

Defendant claims (1) his narrative testimony created a direct conflict of interest with his counsel; (2) his counsel abandoned him during this testimony; and (3) his counsel argued against him.  Defendant maintains these actions deprived him of his right to counsel and due process.  We disagree.

As for conflict of interest, prior to defendant's narrative testimony, counsel explained to the court outside the jury's presence that there was no stopping defendant from proceeding in this manner and counsel had no control over him.  Defendant did not disagree.  In his narrative testimony, defendant complained about his counsel and tendered the defenses he thought his counsel should have raised:  entrapment, discriminatory prosecution, witness bias, and medical cannabis.  As the People aptly observe, defendant "was determined to bring this evidence before the jury in his trial.  He cannot now complain on appeal that he got exactly what he wanted."  (See *People v. Perez* (1979) 23 Cal.3d 545, 549-550, fn. 3 [under the doctrine of invited error, a party is estopped from asserting any error that he induced].)

As for counsel abandonment, defendant cites to the purported conflict of interest and also notes his counsel did not review his narrative testimony prior to defendant's giving it.  We have just rejected defendant's conflict claim—if there was such error, defendant invited it.  As for reviewing the narrative testimony, defense counsel explained, in the proceeding outside the jury's presence prior to this testimony being given, that he had read the first page of the narrative, that it was "the same stuff that [defendant's] been telling me for over a year now," that it was "the same issues that [defendant] has been raising over and over and over and over again," that defendant had "discussed [with counsel] his testimony and what he wants to testify to . . . numerous times," and that the two of them had "discussed what [defendant] wants to tell the jury almost ad nauseam."  Counsel did not abandon defendant as to the narrative testimony.

7

And that brings us to defendant's last claim, that his counsel argued against him. Defendant notes his counsel, in argument, simply ignored most of defendant's narrative testimony; and, even worse, remarked at one point that "one of the few things that [defendant] said on the stand that you can probably find credible because it's corroborated by other evidence . . . [is that the marijuana he possessed] is his medicine." During his argument, defense counsel ignored much of defendant's narrative testimony because it was irrelevant to the charges being tried. As for the challenged remark, it was actually an argument in favor of defendant on the possession charge. Defense counsel argued that possession for medical purposes rather than possession for sale was "entirely credible" (notwithstanding the large amount of marijuana found); counsel reasonably may have wanted to drive home this point by unveiling it against a backdrop of complete candor.

*Trial Court*

Defendant contends the trial court acted with bias against his narrative testimony by failing to review it for admissibility, and by admonishing defendant to refrain from providing legal interpretations, testifying about irrelevant issues, and discussing the absent informant.

"[I]t is 'the duty of the [trial] judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved.' However, 'a judge should be careful not to throw the weight of his judicial position into a case, either for or against the defendant.' [Citation.] [¶] . . . A trial court commits misconduct if it ' "persists in making discourteous and disparaging remarks to a defendant's counsel and witnesses and utters frequent comment from which the jury may plainly perceive that the testimony of the witnesses is not believed by the judge." ' " (*People v. Sturm* (2006) 37 Cal.4th 1218, 1237-1238 (*Sturm*).)

8

As for failing to review the narrative's admissibility, defendant did not request the trial court to do so and therefore may not complain now. (See Evid. Code, § 353.)

As for legal interpretations, the trial court properly instructed the jury that while defendant was entitled to testify in his defense, he was not entitled to provide or interpret the law for the jury; that was the court's job.

As for irrelevant issues, defendant, during his narrative testimony, ventured into areas such as his pretrial incarceration, Oakland's marijuana policies, and newspaper articles about himself, and the trial court steered him back to the issues at hand. In this way, the trial court properly controlled the proceedings and limited the evidence to relevant matters. (*Sturm*, *supra*, 37 Cal.4th at p. 1237.)

Defendant's last point is that the trial court improperly barred him from testifying about the absent informant. As excerpted in defendant's opening brief, the trial court admonished the jury: "I'm going to stop [defendant from] commentating about the person who placed the ad to sell the guitar because we have no information that any of this [is] true. He's not given us any framework." This does appear troubling because, as defendant puts it, it appears the trial court is "virtually calling [defendant] a liar." However, when the record is examined, we learn that appearances can be deceiving.

The record clarifies the following on this point:

"[DEFENDANT (narrative testimony)]: So here is what happened. I called about the guitar. It was an Alvarez [guitar], three-quarter size, because I thought this homeless member [apparently of defendant's cannabis club]—her name is Terrapin—a young lady unfortunately didn't have access to her medical cannabis, got into the criminal world, became involved in crystal meth and broke my heart, and I was—she was born on the same day I was.

9

"[PROSECUTOR]: Your Honor, I object at this point on the grounds of relevance.

"THE COURT: Ladies and gentlemen, I'm going to stop [defendant from] commentating about the person who placed the ad to sell the guitar because we have no information that any of this [is] true. He's not given us any framework."

Thus, the trial court was not questioning defendant's credibility; it was merely ruling on the prosecutor's relevance objection to this "Terrapin" tangent. Shortly after this exchange, defendant was allowed to testify fully, in narrative fashion, about the nature of the marijuana sales transaction at issue here. As defendant testified, this transaction constituted a medical cannabis transaction involving a desperate professional who triggered defendant's empathy and compassion, and who was to obtain the marijuana after receiving his marijuana recommendation and paying with the guitar.

Furthermore, the trial court instructed the jury:

"Do not take anything I said or did during the trial as an indication of what I think about the evidence, the witnesses, or what your decision or verdict should be. . . . You are the sole judges of the evidence and believability of the witnesses. It is up to you [and you] alone to decide the issues in this case." (CALCRIM No. 3530.)

We conclude the trial court did not act with bias regarding defendant's narrative testimony.

*Prejudice*

Even assuming that defense counsel or the trial court erred with respect to defendant's narrative testimony, we would still not reverse. We agree with the People that, "[g]iven that the trial court dismissed one of the firearm enhancements upon defense counsel's [Penal Code section] 1118.1 motion [for insufficient evidence], and the jury could not reach a verdict on the other, [defendant] received the best possible outcome he

10

could have expected given the overwhelming evidence against him for the underlying charges." (See *People v. Watson* (1956) 46 Cal.2d 818, 836 [setting forth the standard of harmful error—reasonable probability of more favorable defense outcome absent error].)

## DISPOSITION

The judgment is affirmed.


            BUTZ           , J.


We concur:


           RAYE           , P. J.


           HULL           , J.